UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - DETROIT

In re:

BART A. CHARLICK and                                    Case No. 06-55675
DONNA M. CHARLICK,                                      Chapter 13
                                                        Hon. Walter Shapero
                    Debtors.

_____/

## OPINION GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING RELATED PLAN MODIFICATION

In this post-confirmation adversary proceeding, Plaintiffs seek a ruling that the claim of the senior mortgagee exceeds the value of the residence and therefore Plaintiffs can proceed to "strip" Defendant's junior lien. Plaintiffs have also filed a related plan modification, seeking to effectuate the lien strip if available. Plaintiffs and Defendant each filed Motions for Summary Judgment. For the reasons set forth in this Opinion, the Court grants Defendant's Motion for Summary Judgment and denies the plan modification.

### I. Jurisdiction

This is a core proceeding identified in 28 U.S.C. § 157(b)(2)(K) for which the Court has jurisdiction pursuant to 28 U.S.C. §§ 157(a) and 1334(b).

### II. General Facts and Procedural Background

Bart and Donna Charlick ("Debtors") filed their chapter 13 bankruptcy petition, Chapter 13 plan, and schedules on October 27, 2006. In the liquidation analysis and statement of value of encumbered property part of the Plan, Debtors' identified their personal residence as the real property located at 1107 Clyde in Highland, Michigan and stated its fair market value to be $190,520.00. Not only did their Plan reflect that valuation, but so did Debtors' Summary of Schedules, Schedule A, and Schedule D. Two mortgagees then held liens on Debtors' residence, to wit: Midwest Loan Services ("Senior

Lienholder") and Research Federal Credit Union, n/k/a Community Choice Credit Union ("Junior Lienholder"). Debtors Plan proposed treating the claims of both mortgagees as Class 2 Continuing Claims, stating that they were "to be paid direct as account is current." On November 13, 2006, Debtors amended their Summary of Schedules and Schedule D for reasons not relevant here, those sworn amendments continued to state the value of the residence as being $190,520.

The Senior Lienholder and Junior Lienholder timely filed Proofs of Claim on December 21, 2006 and December 22, 2006 respectively. The Senior Lienholder's filed mortgage claim was for $190,165.20 (which was less than the $191,817 stated on Debtors' original and amended Schedule D as the claim amount), but relevant here, was slightly less than the $190,520 property value asserted by Debtors. The Junior Lienholder's filed claim was for $42,358.

The Court entered an Order Confirming Plan on February 15, 2007. Nothing in the originally filed Plan germane to the residence or the indicated mortgagees changed upon confirmation. Paragraph II(F)(1) of the confirmed Plan is noteworthy, though, as it addressed "proofs of claim filed at variance with the Plan[;]" by saying: "[T]he proof of claim shall supersede the Plan as to the claim amount, . . . ."

Debtors' chapter 13 bankruptcy then proceeded for approximately 38 months until March 24, 2010, when Debtors terminated their former attorney and employed new counsel. Some two months or so later, Debtors filed (a) a Post-Confirmation Plan Modification proposing cessation of direct payments to Junior Lienholder and the stripping of the Junior Lienholder's lien; and (b) Amended Schedules A and D stating the value of the residence to have been $185,000. Consistent with the proposed plan modification and amended schedules, Debtors contemporaneously filed this adversary proceeding seeking to strip the junior lien. Debtors' position is that, notwithstanding what preceded these new filings, their residence "always" had a value of $185,000.00, and that, consequently, a "lien strip" was appropriate all along and would have been attempted much earlier if Debtors had been represented from the beginning of their bankruptcy by their current counsel.

As proof of the value of the residence, Debtors present as Exhibit 6 to their Motion for Summary Judgment an appraisal dated April 22, 2010 (with an "effective date of October 27, 2006" the bankruptcy filing date) valuing the residence at $185,000.00.[1]

The Junior Lienholder timely objected to the proposed Plan Modification and filed an answer in this adversary proceeding. Junior Lienholder points to Debtors' pleadings up to and including the confirmation of their Plan, and argues that (1) Debtors could not have "stripped" its lien prior to confirmation as there was some, albeit small, equity, and therefore a lien strip was not available; (2) Debtors are precluded from a "lien strip" action given the res judicata effect of their confirmed plan; and (3) a subsequent reclassification of its claim from a Class Two Continuing Claim to a Class Eight General Unsecured Claim, as proposed in the Plan Modification, is also not permitted.

Debtors and Junior Lienholder subsequently filed these Motions for Summary Judgment presently before the Court. Given their mutual dependence, the indicated proposed plan modification has proceeded in tandem with this adversary proceeding and it is also the subject of this opinion.

### III. Discussion

### Summary Judgment Standard

> Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "A fact is 'material' and precludes grant of summary judgment if proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties." The court must view the evidence in a light most favorable to the nonmovant as well as draw all reasonable inferences in the nonmovant's favor.

*United States v. Certain Real Prop*. 800 F.Supp. 547, 549-50 (E.D. Mich. 1992). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 447 U.S. 317, 323-24 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003). Once the moving party satisfies its burden,

---

[1] Another figure in that same appraisal using a "cost approach" was $190,200.

the non-moving party must then "come forward with 'specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (*quoting* Fed. R. Civ. P. 56(e)). It is also to be noted that "[t]he fact that both parties make motions for summary judgment, and each contends in support of his respective motion that no genuine issue of fact exists, does not require the Court to rule that no fact issue exists." *Begnaud v. White*, 170 F.2d 323, 327 (6th Cir. 1948). But, "[a]t the same time, 'cross motions for summary judgment do authorize the court to assume that there is no evidence which needs to be considered other than that which has been filed by the parties.'" *Greer v. United States*, 207 F.3d 322, 326 (6th Cir. 2000) (*quoting Harrison Western Corp. v. Gulf Oil Co.*, 662 F.2d 690, 692 (10th Cir. 1981)).

### A. Section 1327 and Res Judicata Effect of the Confirmed Chapter 13 Plan

As noted, Junior Lienholder argues that Debtors are precluded from raising this "lien strip" issue given the res judicata effect of their confirmed plan on the value of the property. Debtors plan valued the property at $190,520 (which given the slightly lower filed first mortgage lien claim precluded a lien strip) and the Debtors' bankruptcy case progressed for some 38 months before Debtors' new counsel filed the Post-Confirmation Plan Modification proposing to strip the Junior Lienholder's lien and amended their Schedule A and Schedule D to show the value of their residence as $185,000.

11 U.S.C. § 1327(a) states that the "provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." "[V]aluation of a secured claim is adjudicated by the order of confirmation and a plan is considered res judicata as to claim determinations." *Massachusetts Housing Finance Agency v. Evora*, 255 B.R. 336, 343 (D. Mass. 2000), see also *Cline v. Welch*, 1998 U.S. App. LEXIS 26564, No. 97-5080, 1998 WL 773999 (6th Cir. Oct. 11, 1998 (unpublished opinion) (binding effect extends to any issue necessarily determined by confirmation order); *Ford Motor Credit Co. v. Stevens*, 130 F.3d 1027, 1029 (11th Cir. 1997); *United States v. Richman*, 124 F.3d 1201, 1209 (10th Cir. 1997); *Chrysler Fin. Corp. v. Nolan*, 234 B.R. 390, 396 (M.D. Tenn. 1999).

Here, the value of the property was determined to be $190,520 at the time the Chapter 13 plan was confirmed and the confirmed plan is res judicata as to the issue of

the value of the property; thus, Debtors are precluded from re-litigating this issue. See *In re Cruz*, 253 B.R. 638 (Bankr. D. N.J. 2000); *In re Rutt*, 2010 Bankr. LEXIS 3136, No. 07-13448 (Bankr. D. Colo. Sept. 10, 2010) (unpublished opinion). Debtors could have disputed the value of the property pre-confirmation and sought to "strip" Junior Leinholder's claim prior to confirmation if such was determined to be appropriate at that time. "An order confirming a Chapter 13 plan is res judicata as to all issues which were or could have been decided at the confirmation hearing." *Salt Creek Valley Bank v. Wellman (In re Wellman)*, 322 B.R. 298, 301 (B.A.P. 6th Cir. 2004). The parties are bound by the terms of the confirmed plan, including the values assigned to collateral and the amount of payment to be received. *Id*. Debtors' prior counsel's failure to litigate the value of the property and failure to attempt a lien strip pre-confirmation cannot be remedied by this post-confirmation second bite at the apple. *Evora*, 255 B.R. at 343 ("The Code does not provide a second bite at the apple").

Given the very slight difference between the amount of the first lien claim and the indicated value of the property at the time of confirmation in this case, in light of the inexactitude of real estate valuations then (and now), one can wonder why a different stance might not, or could not, have been taken at that time as might have been able to produce or justify a lien strip. There are a number of possible explanations that need not be elaborated upon here. For whatever reasons, a lien strip did not occur and the res judicata principle needs to be applied consistently in this as in any other case. Here, the Debtor is in essence arguing that the valuation was not really correct at the time of confirmation[2], as opposed to a situation where, let's say, the valuation was not objected to at the time of confirmation, i.e.: was somewhat larger than the first mortgage balance (thus precluding a lien strip), but during the period of the plan that value decreased to the point where it was less than the first mortgage balance at whatever might be the appropriate time. Would that be a different situation justifying a plan modification and an accompanying lien strip? The answer is likely no, given the foregoing reasoning as well as the post confirmation plan modification limitations of the statute, hereinafter discussed. The Court finds there are no issues of material fact in this, a case which

---

[2] No argument is made here, nor likely could be, given the circumstances and the passage of time, that Rule 60(b)(1) for instance might afford a basis for relief in this situation.

therefore can be disposed of as a matter of law on the forgoing basis. Therefore, Junior Lienholder's Motion for Summary Judgment is granted.

### B. Post-Confirmation Modification and Reclassification of the Claim

Junior Lienholder further argues that a post-confirmation modification seeking reclassification of its claim from a Class Two Continuing Claim to a Class Eight General Unsecured Claim is legally unavailable.

It would appear that the granting of Defendant's summary judgment motion would essentially moot the proposed plan modification, given that the latter was apparently filed only for the purpose of effectuating the now denied lien strip (particularly given the Court's Guideline 12, which, absent consent, requires that an adversary proceeding be filed to strip a junior lien in a Chapter 13 case). That notwithstanding, is there an independent statutory basis for obtaining a lien strip by way of a post-confirmation plan modification?

11 U.S.C. § 1329(a), which governs post-confirmation modifications of Chapter 13 plans, provides, in pertinent part:

> (a) At any time after confirmation of the plan but before completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim to –
>
>> (1) increase or decease the amount of payments on claims of a particular class provided for by the plan;
>>
>> (2) extend or reduce the time for such payments;
>>
>> (3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan . . .

Several Courts have addressed the scope of what can be accomplished by a post-confirmation modification with respect to a change in the treatment of secured creditors. See eg. *In re Adkins*, 425 F.3d 296 (6th Cir. 2005); *In re Nolan*, 232 F.3d 528 (6th Cir. 2000); *In re Disney*, 386 B.R. 292 (Bankr. D. Colo. 2008); *In re Adams*, 270 B.R. 263 (Bankr. N.D. Ill. 2001); *In re Cruz*, 253 B.R. 638 (Bankr. D. N.J. 2000); and *In re Jock*, 95 B.R. 75 (Bankr. M.D. Tenn. 1989).

The Court is persuaded by the analysis in *Nolan*. In that case, the debtor filed a

motion to modify her confirmed plan to surrender a vehicle which she had treated as collateral for a secured claim in her plan, and which she valued at an amount less than the debt it secured.  She sought to reclassify the deficiency resulting from the sale of the surrendered vehicle as an unsecured claim. The secured creditor objected to that modification, claiming that it was entitled to the amount of the secured claim as it was fixed at the time the plan was confirmed.  The Sixth Circuit agreed with the secured creditor, concluding that the debtor was required to pay the secured creditor the amount of the secured claim as of the date of confirmation.  That Court stated that § 1329(a) "only affords the debtor a right to request alteration of the amount or timing of specific payments . . . . 'This section does not state that the plan may be modified to increase or reduce the amount of claims.  This is of significance in relation to secured claims.'" *Nolan*, 232 F.3d at 534 (citations omitted).

The Debtors cite *In re Frost*, 96 B.R. 804 (S.D. Ohio 1989) for the proposition that a debtor may modify a Chapter 13 Plan and that the order confirming plan is not binding on all parties.  However, that case was essentially overruled by the Sixth Circuit in *Nolan*.

Despite the fact that *Nolan* did not involve a debtor attempting to strip a lien post-confirmation, this Court finds its rationale and reasoning to be applicable to this case.  Thus, this Court finds § 1329(a) does not permit the Debtors to change the classification of the Junior Lienholder's claim from secured to unsecured.

### IV.  Conclusion

For the foregoing reasons, (a) Junior Lienholder's Motion for Summary Judgment is granted and Debtors' Motion for Summary Judgment is denied; and (b)  Debtors' Post-Confirmation Plan Modification is denied.  Junior Lienholder shall prepare and present an appropriate order.

.

Signed on March 08, 2011

```
                              /s/ Walter Shapero
                              Walter Shapero
                              United States Bankruptcy Judge
```